## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,

v.

MEAD JOHNSON NUTRITION COMPANY,

        Defendant.
_____/

Civil Action No.:
Honorable:

COMPLAINT AND JURY TRIAL DEMAND

## **NATURE OF THE ACTION**

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Nancy Driesinga. As alleged with greater particularity in paragraph 13 below, the Equal Employment Opportunity Commission ("the Commission") alleges that Mead Johnson Nutrition Company ("Defendant Employer") violated the ADA by failing to provide Driesinga with reasonable accommodations.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Michigan.

## PARTIES

3.      Plaintiff, the Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant, Mead Johnson Nutrition Company (the "Defendant Employer"), has continuously been doing business in the State of Michigan and the City of Zeeland, and has continuously had at least 15 employees.

5. At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5), (7).

6. At all relevant times, Defendant Employer has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## **ADMINISTRATIVE PROCEDURES**

7. More than thirty days prior to the institution of this lawsuit, the Charging Party filed a charge with the Commission alleging violations of the ADA by Defendant Employer.

8. On May 4, 2022, the Commission issued to Defendant Employer a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. The Commission engaged in communication with Defendant Employer to provide Defendant with the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10. On May 9, 2022, the Defendant Employer notified the Commission that it declined to participate in conciliation.

11. On July 19, 2022, the Commission issued to Defendant Employer a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

13. Between September 16, 2020 and December 7, 2020, Defendant Employer engaged in unlawful employment practices at its Zeeland, Michigan manufacturing facility, in violation of Section 102(a) of Title I of the ADA, 42 U.S.C. § 12112(a). Defendant violated the ADA by refusing to provide Nancy Driesinga a reasonable accommodation, as set forth below:

    a. At all times relevant to this complaint, Nancy Driesinga is or was a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8). For close to two years between 2018 and 2020, Driesinga suffered from severe foot and ankle pain secondary to her diagnosis of bone spurs in her right heel and Achilles tendon, gastrocnemius equinus and Achilles tendinosis. At all relevant times,

Driesinga had a physical impairment that substantially impaired her in the major life activities of walking and standing.

      b.      At all times relevant to this complaint, Driesinga had a record of physical impairments that substantially impaired her in the major life activities of walking, standing and lifting. These recorded impairments included but were not limited to severe foot and ankle pain secondary to her diagnosis of bone spurs in her right heel and Achilles tendon, gastrocnemius equinus and Achilles tendinosis, surgery on the ankle and Achilles tendon, torn shoulders and rotator cuffs and multiple surgeries for the same, damaged nerves and/or tendons in her wrists and multiple surgeries for the same.

      c.      Driesinga began her employment at Defendant's Zeeland manufacturing facility in 1988.

      d.      Between 2012 and 2018, Driesinga had four surgeries on her shoulders and wrists for severe pain and damaged and/or torn tendons, nerves and/or rotator cuffs. Defendant was aware of all of these surgeries.

      e.      In 2018, she began to suffer from severe pain in her right foot and ankle, which she rated at 9/10. The pain caused her to take four Advil multiple times a day to complete her 12-hour shifts for Respondent. By the

end of these shifts Driesinga would regularly be limping in an open and obvious manner.

 f. In June of 2019, Driesinga was diagnosed with bone spurs in her right heel and Achilles tendon, gastrocnemius equinus and Achilles tendinosis. Her pain was noted to be 9/10. She was prescribed 800 mg of ibuprofen to be taken four times a day and a prescription anti-inflammatory gel for topical application.

 g. On July 7, 2020, Driesinga had surgery on her right foot and ankle. The surgical procedures performed were gastrocnemius recession, percutaneous Achilles tendon lengthening (cut Achilles tendon, stretched it and reattached it) and heel spur excision.

 h. Post operatively, one of Driesinga's incisions became infected, requiring antibiotics.

 i. Driesinga was unable to place any weight on her right foot between July 7 and September 11, 2020.

 j. Driesinga was off work on approved FMLA from her position as a Casepacker Operator at Respondent's Zeeland, Michigan facility from July 7 to September 30, 2020.

  k. On or about September 15, 2020, Driesinga acquired new steel toed shoes from Mieras to wear when she returned to work. Driesinga used a slip provided by Defendant to acquire the shoes.

  l. On or about September 16, 2020, Driesinga requested a reasonable accommodation in the form of a work-hardening program. The request was supported with a letter from her physician.

  m. Driesinga requested to be permitted to return to work (wearing steel-toed shoes) four hours per day on September 21, 2020, 6 hours per day on October 5, 8 hours per day on October 19, and to return to work with no restrictions (full 12-hour shifts) on November 2, 2020.

  n. Defendant knew or should have known that Driesinga was requesting to return to work on a work-hardening program wearing steel-toed shoes. Defendant paid for the steel-toed shoes Driesinga acquired on September 15, 2020.

  o. Defendant could have accommodated Driesinga's request to return to work on a work-hardening program with no undue burden on Defendant, but instead denied the request.

  p. In the alternative, Driesinga made clear she would like her job to be held for her until she was cleared to work with no restrictions on November 2, 2020.

  q. Defendant led Driesinga to believe that her job would be held for her until November 2, 2020. Driesinga was told that she was on approved short-term disability leave through November 1, 2020.

  r. On or about October 15, 2020, at which point Driesinga had only 17 days of leave remaining before she could return to work with no restrictions, Defendant posted Driesinga's position as open with an application period of seven (7) days.

  s. As of the date Defendant posted Driesinga's position, she had been working for Defendant at the Zeeland facility for close to 32 years.

  t. Defendant gave Driesinga no advance notice that it was posting her position.

  u. On October 21, Defendant mailed Driesinga a letter dated October 15 advising that her position was being posted.

  v. By mailing the letter on October 21 and choosing not to call or e-mail Driesinga, Defendant insured that Driesinga would have no notice that her position had been posted (with a seven-day application period) or chance to apply for the position.

  w. On October 26, Driesinga learned from a co-worker that her position had been posted. She immediately contacted Defendant's HR representative, who advised her the position had already been filled.

    x.    Defendant could have accommodated Driesinga by holding her position for her until November 2, 2020 with no undue burden on Defendant, but refused to do so.

    y.    Defendant's replacement for Driesinga did not actually begin work for close to another year.

    z.    Defendant refused to return Driesinga to her former position because of Driesinga's record of physical impairments.

    aa.    Defendant advised Driesinga that she was being placed on "unpaid leave" for 30 days effective October 30, 2020. Defendant further advised she could apply for other positions with Defendant during the 30 days and that if she failed to secure one, she would be terminated.

    bb.    On multiple occasions in November of 2020, Driesinga requested that she be reassigned to vacant Primary Packaging Operator positions for which she was fully qualified.

    cc.    Defendant refused to reassign Driesinga to these open positions with no explanation offered.

    dd.    At the end of the 30 day "unpaid leave" period, Defendant offered Driesinga an undesirable and more physically demanding "EZ 1 Material Tester" position.

  ee. Driesinga had no alternative but to accept the position or be terminated.

 14. The effect of the practices complained of in paragraph 13 above has been to deprive Driesinga of equal employment opportunities and otherwise adversely affect her status as an employee because of her disabilities.

 15. The unlawful employment practices complained of in paragraphs 13 above were intentional.

 16. The unlawful employment practices complained of in paragraph 13 above were done with malice or with reckless indifference to the federally protected rights of Driesinga.

## **PRAYER FOR RELIEF**

 Wherefore, the Commission respectfully requests that this Court:

 A. Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from failing to provide reasonable accommodations for the known disabilities of qualified employees with a disability.

 B. Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

    C.    Order Defendant Employer to make Driesinga whole, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial.

    F.    Order Defendant Employer to make Driesinga whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraph 13 above, in amounts to be determined at trial.

    G.    Order Defendant Employer to make Driesinga whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraph 13 above, including emotional pain, distress, suffering, inconvenience, anxiety, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

    H.    Order Defendant Employer to pay Driesinga punitive damages for its malicious and reckless conduct, as described in paragraph 13 above, in amounts to be determined at trial.

    I.    Grant such further relief as the Court deems necessary and proper in the public interest.

    J.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

                                    Respectfully submitted,

                                    EQUAL EMPLOYMENT
                                    OPPORTUNITY COMMISSION

                                    /s/ Miles L. Uhlar
                                    MILES L. UHLAR (P65008)
                                    Trial Attorney
                                    Detroit Field Office
                                    477 Michigan Ave., Room 865
                                    Detroit, MI 48226
                                    (313) 774-0015
                                    miles.uhlar@eeoc.gov

Dated: May 3, 2023